FRANK KARAS, BY NEXT FRIEND), RESPONDENT, v. BURNS BROTHERS, A CORPORATION, APPELLANT.

FRANK KARAS. RESPONDENT, v. BURNS BROTHERS, A CORPORATION, APPELLANT.

Submitted December 4, 1919—Decided April 9, 1920.

1. The liability of the master ceases when the agent is acting not in the master's occupation but in line of conduct peculiar to himself and suggested not by any benefit or accommodation to the master or to the master's interests.

2. Where an individual *sui juris* procures at his own request the privilege of riding in a conveyance, he occupies the status of a mere licensee or volunteer, to whom the driver or owner owes only the duty of refraining from acts wantonly or willfully injurious, and the licensee thereby assumes the ordinary risks of damage from dangers and accidents incident to travel in the operation of the conveyance.

3. An agent, acting without the scope of his authority, and indulging in an act in nowise related to the business he was employed to pursue, cannot, by such extraneous independent act, impose liability upon the master for damage thus incurred because the person damaged is an infant.

On appeal from the Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices MINTURN and BLACK.

For the respondents, *Charles M. Egan.*

For the appellant, *Runyon & Autenreith.*

The opinion of the court was delivered by

MINTURN, J. These two appeals are the result of a verdict at the Circuit in favor of the plaintiffs, father and son, for damages sustained by the son, an infant of eight years, by falling from a coal wagon of the defendant, driven by one of its employes.

Defendant corporation was engaged in selling and delivering coal, and its driver in August, 1917, while driving a wagon loaded with coal, and harnessed to a team of horses, helped up on his wagon the infant plaintiff, who while standing upon the top of the coal, back of the driver, was thrown from the wagon to the street, by which fall he suffered the injuries complained of. At the time the boy was helped upon the wagon, another boy who was already on the wagon, occupying a seat with the driver, called to the plaintiff to "come on and get a ride to Hoboken," and in response to that call plaintiff was helped on the wagon by the driver. The case went to the jury upon a charge of the trial court to which exceptions were taken, and which with certain exceptions taken during the trial, present the basis of this appeal.

The complaint is predicated upon the familiar legal theory of an invitation by the driver, which gave to the infant plaintiff the legal status of an invitee, and the case was tried and

presented to the jury by the trial court upon that assumption.

The basis for this contention was furnished by the fact that the driver by his act of helping the child into the wagon was acting within the scope of his authority, for which act the master upon the familiar rule of responsibility resulting from the doctrine of *respondeat superior,* is made liable. The adjudications which are cited to support the contention are those which have been evolved from situations in which the driver concededly was employed in a course of business, and a line of employment which involved the carriage and transportation of passengers, during the course of which employment he invited the infant for some personal reason, connected with the driver's convenience or the general operation of the car, to become a passenger. Such was the rationale in *Danbeck* v. *N. J. Traction Co.,* 57 *N. J. L.* 463, and *Solomon* v. *Public Service Ry. Co.,* 87 *Id.* 284.

What was done in those cases by the driver, was within the apparent scope of his authority, as a public carrier, and in such a situation liability was predicated upon a theory consistent with the legal philosophy underlying the doctrine of *respondeat superior.*

But there is a clear line of demarcation upon legal principle between cases of that general character and cases where by no latitude of reasonable construction, it can be maintained that the duty of carrying the public is within the general scope of an agent's duty. and where in cases of injury resulting from an agent's dereliction in that regard the master cannot be chargeable with responsibility upon any recognized principle of the law of agency.

Such was *Kiernan* v. *N. J. Ice Co.,* 74 *N. J. L.* 175, in which the late Mr. Justice Reed wrote the opinion for this court, in a case involving an assault by the driver of an ice wagon upon a boy whom he had allowed to take ice from an ice wagon. It was therein laid down that "a servant, in extending an unauthorized invitation to a person to ride upon a dump cart, or to ride upon a hand car, or to a child to ride upon a trolley car, or upon a gravel train, or freight

car, is not acting within the scope of his authority, and if the invited person is injured the master is not liable."

This general statement of the principle would seem to be controlling in the case at bar. But since the determination of that case we have had presented for review, a class of cases which in their results, as we have determined them, would seem to emphasize the statement of legal principle thus expounded. Based upon the doctrine enunciated in *Holler* v: *Ross,* 68 *N. J. L.* 324, that "the master is not responsible if the wrong done by the servant is done without his authority, and not for the purpose of executing his orders or doing his work," the cases of *Evers* v. *Krouse,* 70 *Id.* 653; *Doran* v. *Thomsen,* 76 *Id.* 754; *Missell* v. *Hayes,* 86 *Id.* 348; *Jennings* v. *Okin,* 88 *Id.* 659, and *Cronecker* v. *Hall,* 92 *Id.* 450, have been determined in which we have held that a deviation by a driver or chauffeur from the line of conduct or course of action mapped out for him by the master, during which injury resulted to a third person, imposed no liability upon the master. In the language of *Jennings* v. *Okin,* it was declared that "from the moment it was undertaken, the relationship of principal and agent theretofore subsisting was severed." So in the present case the deviation while not in violation of a designated route, consisted in following a course of conduct incompatible with the purpose of the agent's employment, and in nowise related thereto. In the one case the deviation was as marked and distinct as in the other, for the conspicuous principle at the basis of the entire relationship is that liability of the master ceases when the agent is acting not in the master's occupation, but in line of conduct peculiar to himself and suggested not by any benefit or accommodation to the master or to the master's interests. In such a situation the agent becomes the principal and is liable for the natural consequences of his independent acts. For this purpose it was legal and material for the master to show that the driver had been instructed to observe a course of conduct inconsistent with his act.

In the case at bar that opportunity was denied to him by the ruling of the trial court.

We have also declared in this court, that where an individual *sui juris* procures at his own request the privilege of riding in a conveyance he occupies the status of a mere licensee or volunteer, to whom the driver or owner owes only the duty of refraining from acts wantonly or willfully injurious, and that the licensee thereby assumes the ordinary risks of damage from dangers and accidents, incident to travel in the operation of the machine or conveyance. *Lutvin v. Dopkus, post p.* 64.

The situation thus presented and which fails to impose liability upon the master or upon the owner of the vehicle, involves the application of the same principles to the case of the present infant plaintiff. But the plaintiff's insistence is that the legal status of the infant removes it from the general application of these settled principles applicable to the suitor *sui juris*.

We do not apprehend that *Solomon* v. *Public Service Ry. Co., ubi supra,* lays down the doctrine as a general rule of law that an agent acting without the scope of his authority, and indulging in an act in nowise related to the business he was employed to pursue, can by such extraneous independent act impose liability upon the master for damage thus incurred because the plaintiff is an infant.

In the cases upon which reliance is placed as a basis for decision in the Solomon case, the act which gave rise to the injury had some relation to the employment of the agent, and in that fact inheres the differentiation.

In the case of *Kiernan* v. *N. J. Ice Co., ubi supra,* the infant was fifteen years of age, and the learned justice who wrote the opinion for this court gives no consideration to the fact of infancy as a basis for departing from the settled doctrine which fails to impose liability upon the master for damages resulting from an act clearly extraneous to the agent's employment, and in nowise identified therewith.

The turntable cases in this state also present a situation comparable in principle with the case at bar. *Turess* v. *N. Y., S. & W. R. R.,* 61 *N. J. L.* 314; *Delaware, &c., R. R.* v. *Reich. Id.* 635.

In those cases liability was predicated upon an implied invitation arising from the contiguity of the railroad turntables to the public street, thus presenting an attraction to the children who were injured while playing thereon.

In the latter case the present Chief Justice, speaking for the Court of Errors and Appeals, enters into a comprehensive analysis of the doctrine of implied invitation, and denies its application from the fact of the mere existence of the turntables near a street, but entirely upon the owner's land.

The only differentiating fact in the case *sub judice* is the apparent invitation of the driver of the wagon in helping the child to mount thereon. Yet the complete answer to that, in our judgment, inheres in the indubitable fact that the act of the driver was not performed in the execution of any duty incident to his employment, and that liability for the resulting damage cannot upon legal principle be thus shifted from the responsible actor who caused the damage, to one in nowise responsible therefor, upon any recognized logical application of the doctrine of *respondeat superior*.

The judgment appealed from must therefore be reversed.